# AFFIDAVIT OF SPECIAL AGENT PETER COSTE IN SUPPORT OF APPLICATIONS FOR A CRIMINAL COMPLAINT AND SEARCH WARRANT

I, Peter Coste, having been duly sworn, do hereby depose and state as follows:

## Agent Background

1. I am a Special Agent with Homeland Security Investigations ("HSI") and have been so employed since December 2018. I have successfully completed a training program in conducting criminal investigations at the Federal Law Enforcement Training Center in Glynco, Georgia. In 2017, I graduated from Fairleigh Dickinson University at Teaneck, New Jersey with a B.A. degree in Individualized Studies with a Specialization in Criminal Justice. My current duties as an HSI Special Agent include conducting investigations involving the fraudulent acquisition, production, and misuse of United States (U.S.) immigration documents, U.S. passports, and identity documents. Due to my training, experience, and conversations with other law enforcement officers, I am familiar with the methods, routines, and practices of document counterfeiters, vendors, and persons who fraudulently obtain or assume false identities.

2. I am also a member of HSI's Document and Benefit Fraud Task Force ("DBFTF"), a specialized field investigative group comprised of personnel from various state, local, and federal agencies with expertise in detecting, deterring, and disrupting organizations and individuals involved in various types of document, identity, and benefit fraud schemes. DBFTF is currently investigating suspected aliens who are believed to have obtained stolen identities of U.S. citizens living in Puerto Rico and used those identities to obtain public benefits, which they would not otherwise be eligible to receive, including Social Security numbers ("SSNs"), MassHealth benefits, public housing benefits, and unemployment benefits. Agents have conducted an analysis of individuals who have received certain public benefits in Puerto Rico and Massachusetts on or about the same dates in an effort to identify individuals in

Massachusetts who have been unlawfully and fraudulently using the identities of U.S. citizens.

**Purpose of Affidavit**

3. I submit this affidavit in support of an application for a criminal complaint charging DOE, John ("DOE") with (i) Misuse of a Social Security Number, in violation of 42 U.S.C. § 408(a)(7)(B); (ii) False Statement in Application and Use of Passport, in violation of 18 U.S.C. § 1542;  (iii) Mail Fraud in violation of 18 U.S.C. §§ 1341, 1342; (iv) Wire Fraud, in violation of 18 U.S.C. § 1343; and (v) aggravated identity theft, in violation of 18 U.S.C. § 1028A.

4. I also submit this affidavit in support of an application for a search warrant for the following property: ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, as described in Attachment A.  I have probable cause to believe that this property contains evidence, fruits, and instrumentalities of the crimes identified above, as described in Attachment B.

5. As set forth in more detail below, there is evidence that DOE unlawfully used the name and SSN of a real person while knowing that these identifiers belonged to a real person. Among the evidence that DOE knew that this identity was that of a real person is his successful use of the identity to obtain multiple government-issued identification documents, including a driver's license issued by the Massachusetts Registry of Motor Vehicles (RMV) and a U.S. passport issued by the U.S. Department of State.  DOE then used these fraudulent identification documents to obtain unemployment benefits.  DOE further provided the victim's identity when arrested by state authorities for narcotics offenses in September and December 2022.

6. This affidavit is based on my personal knowledge, information provided to me by other law enforcement officers and federal agents, and my review of records described herein. This affidavit is not intended to set forth all of the information that I have learned during this

investigation but includes only the information necessary to establish probable cause for the requested complaint and search warrant.

## Probable Cause

### The U.S. Passport Application

7. On January 11, 2018, an individual submitted an application for the issuance of a U.S. passport book and U.S. passport card at the U.S. Post Office in Roslindale, Massachusetts. The applicant represented on the application that he was a person whose initials were E.C.[1] The applicant further represented that his date of birth was xx/xx/1974, and that his SSN was xxx-xx-1236. The applicant also included a photograph submitted as part of the application for the U.S. passport. The supporting documentation submitted with the U.S. passport application included a Commonwealth of Massachusetts Department of Correction inmate identification card with a photograph of an individual in the name of E.C. and a date of birth of xx/xx/1974. The supporting documentation also included a birth certificate from Puerto Rico for an individual in the name of E.C.R. with a date of birth of xx/xx/1974. The individual purporting to be E.C. signed the application under penalty of perjury. As a result of that application, the U.S. Department of State issued the individual purporting to be E.C. a U.S. passport book with no. xxxxx0464 and U.S. passport card with no. Cxxxx6522.

### The RMV Application

8. On July 26, 2019, an individual submitted an application for the issuance of a Massachusetts State driver's license at the RMV office in Boston, Massachusetts. The applicant represented on the application that he was a person whose initials were E.C. He further

---

[1] I am protecting the identity of the victim by using initials only. The identity of the victim, E.C.R. is known to the government. These initials represent that victim's first and last names. To protect the victim's privacy, only the initials "E.C.R.," "E.C.," and "E.R." are used in this affidavit to reflect variations of the victim's full name.

represented that his date of birth was xx/xx/1974, and that his SSN was xxx-xx-1236. The application materials include a U.S. passport in the name of E.C., and a previously-issued Massachusetts State identification card in the name of E.C. The individual purporting to be E.C. signed the application under penalty of perjury. As a result of that application, the RMV issued the person purporting to be E.C. a Massachusetts State driver's license with no. Sxxxx8181.[2]

## CARES Act Unemployment

9. On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") was signed into law. The CARES Act created a new temporary federal unemployment insurance program called Pandemic Unemployment Assistance ("PUA"). Generally, PUA provides unemployment insurance benefits for individuals (i) who are not eligible for other types of unemployment (e.g., people who are self-employed, independent contractors, gig economy workers); and (ii) who are otherwise able to work but are prevented from doing so because of the COVID-19 pandemic.

10. The Massachusetts Department of Unemployment Assistance ("DUA") administers and manages the PUA program in the Commonwealth of Massachusetts. Here, the PUA minimum weekly benefit allowance was $267. The PUA weekly benefit allowance could increase but could not be more than Massachusetts's maximum weekly benefit rate for regular unemployment insurance ("UI") benefits, or $855.[3]

11. PUA claims submitted via DUA are processed via a server in Colorado. PUA claims were frequently submitted via the internet, and I understand that individuals who

---

[2] The RMV had also previously taken and stored a photograph of the applicant purporting to be E.C. on November 21, 2012, as part of the Massachusetts State learner's permit application.

[3] On October 4, 2020, the maximum weekly benefit amount for UI was changed from $823 to $855. On October 3, 2021, the maximum weekly benefit was increased to $974.

submitted PUA-related information to DUA via the internet cause wires to be transmitted to and/or from this Colorado-based server.

12. As part of the PUA application process, a claimant had to provide first and last name, SSN, date of birth, an email address, and a home address. In addition, a claimant must select a preferred payment method: Direct Deposit or Debit Card.

13. Before receiving PUA via DUA, a claimant had to verify their identity which includes a combination of personal identifying information, internet protocol address, and email and/or bank account information previously used with either the Massachusetts Department of Revenue and/or the Massachusetts Registry of Motor Vehicles.  If the verification fails, DUA would place an "ID verification" on a claim.  To satisfy the ID verification, a claimant had to provide his or her proof of identification (government-issued identity document), SSN (SSA card or tax form), and address.

## Flow of CARES Act Funds

14. Regardless of which of the programs described above was involved, funds were distributed to program participants by DUA.  These funds were received by DUA from the United States Department of the Treasury (Treasury) through Treasury's program entitled Automated Standard Application for Payments ("ASAP").  ASAP is an electronic system that federal agencies use to securely transfer money to recipient organizations.  Federal agencies enroll recipient organizations, authorize their payments, and manage their accounts.  Recipient organizations then request payments from these pre-authorized accounts.  Recipient organizations may include state and local governments, educational and financial institutions, vendors and contractors, profit and non-profit entities, and Indian tribal organizations.  ASAP is free for both federal agencies and recipient organizations.

15. For the programs described above, the recipient organizations were various State Workforce Agencies ("SWA"), including DUA. An SWA participating in these programs has an account in ASAP, from which it may draw funds to make payments to individual recipients. Before being able to draw down those funds, the funds must first be placed in the SWA's ASAP account. Federal agencies use Treasury's asap.gov site to self-create and fund the SWA's ASAP account.

16. When the SWA for which the account was funded was ready to receive the funds, the SWA would make a payment request using the ASAP web interface, and Treasury would then disburse the funds to the SWA's bank account for the SWA's use. The flow of funds from the ASAP account to the SWA's bank account always occurs in one of two electronic payment methods: an Automated Clearinghouse ("ACH") payment or by another electronic service operated by the Federal Reserve Bank (FRB) system called "Fedwire."

17. The origin of the payment to the SWA's bank account from the SWA's ASAP account originates from wherever the SWA made the request for payments, which generally occurs wherever the SWA is located. Once the SWA makes this request, the Treasury Web Applications Infrastructure ("TWAI") routes the funds through one of two Operations Centers, either the Dallas Operations Center ("DOC") located in Dallas, Texas, or the East Rutherford Operations Center ("EROC") located in East Rutherford, New Jersey. The payment path always includes routing through one of these two centers for processing.

18. After that, the payment path then goes to one of four different locations, depending on whether the ACH or Fedwire payment method is used.

19. If it is an ACH payment, the payment generally passes through the ACH Clearinghouse in Atlanta, Georgia. The ACH Clearinghouse is an organization that clears ACH

payments, whether for the government, individuals, or commercial entities, and is unrelated to the ASAP program. ASAP payments are handled by the ACH Clearinghouse as any other ACH payments are handled. The ACH Clearinghouse has a backup system, in the event that the system in Georgia becomes unavailable due to system maintenance, disaster or other reasons. This backup facility is located in Minneapolis, Minnesota. While the majority of ASAP ACH payments flow through Atlanta, those that do not necessarily flow through Minneapolis instead.

20. Alternatively, if the ASAP payment is being made as a Fedwire payment, the payment path typically passes through the FRB New York's Clearinghouse, located at the EROC in New Jersey. The FRB New York's Clearinghouse clears Fedwire payments for government and commercial entities, and is unrelated to the ASAP program. ASAP payments are handled by the FRB New York's Clearinghouse as any other Fedwire payments are handled. The FRB New York's Clearinghouse has a backup system, in the event that the system in New Jersey becomes unavailable due to system maintenance, disaster, or other reasons. This backup facility is located at the DOC in Dallas, Texas.

21. Regardless of whether the ASAP payment was made by ACH and flowed through Atlanta, Georgia (or through Minneapolis, Minnesota), or whether the payment was made by Fedwire and flowed through the EROC in New Jersey (or through the DOC in Texas), the funds then flow to the SWA's bank account. It is at this point the SWA has access to the ASAP funds for distribution to program participants, and Treasury's involvement regarding these funds ceases. Whether the SWA's bank account is located in the same state as the SWA or elsewhere, the funds would have necessarily flowed through the facilities described above prior to arriving in the SWA's bank account.

22. According to DUA, it issued all benefit payments from an account maintained at

People's United Bank in Connecticut. As such, all transactions for PUA claims were initiated from this account.

### PUA Claim in E.C.'s Name

23. On or about May 12, 2020, a PUA claim (A00-000-0321-8351) was submitted electronically in the name of E.C. with SSN xxx-xx-1236, date of birth xx/xx/1974, Massachusetts driver's license Sxxxx8181, email exxxxxcxxxxxxx696969@icloud.com,[4] phone number ▮▮▮▮▮▮▮▮, and address ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. In the PUA application, the claimant certified he was a "United States citizen or American national."

24. In the initial application, the claimant represented that his employment was first affected by COVID-19 on March 8, 2020, and identified the reason for the impact as: "I don't have a recent history of full-time work and I was scheduled to start a job with a new employer. I cannot start that job or the offer was withdrawn as a result of COVID-19." Claimant further reported that he earned $12,000 in 2019, and had one dependent,[5] and aside from COVID-19, was willing and able to work. Claimant also requested the PUA benefits be directly deposited onto a DUA pre-paid debit card from Bank of America.

25. Based upon the information submitted to DUA, on or about May 13, 2020, the DUA determined that the PUA claim in E.C.'s name was eligible to receive the minimum weekly benefit allowance of $267 and a weekly dependency allowance of $25 plus any additional CARES Act monies.

26. On or about May 13, 2020, DUA issued a total of $6,228 on the E.C. claim for weekending periods March 14, 2020 to May 9, 2020. DUA sent a pre-paid debit card in the

---

[4] The email address is a partial spelling of E.C.'s name and is therefore redacted herein.
[5] DUA provides additional monies to claimants who claim they have dependents. This dependency allowance is $25 per week per dependent up to half of the claimant's weekly benefit allowance.

amount of $6,228 to ▋ via the U.S. Postal Service.

27. In June 2020, DUA sent communications both via email to exxxxxcxxxxxxx696969@icloud.com and via the U.S. Postal Service to the Dorchester address on the claim. DUA's communications stated that the claim submitted in E.C.'s name was not eligible to receive PUA benefits as E.C. had yet to exhaust his UI benefits, which was a requirement to receive PUA benefits.[6] On or around the same time, DUA also identified that the E.C. PUA claim required additional documentation to confirm the identity of E.C.—the "ID verification" discussed above. The claimant never responded to provide the additional documentation to confirm the identity of E.C. and, thus, no further PUA payments were made.

## Confirmation of a Valid Social Security Number

28. The Social Security Administration ("SSA"), Office of Inspector General has confirmed that SSN xxx-xx-1236 is assigned to E.C.R.

## Identification of Additional Imposter Identity

29. On September 15, 2022, the Weymouth, Massachusetts Police Department arrested an individual purporting to be E.C. for the offense of Cocaine Trafficking. Pursuant to the September 15, 2022 arrest, as part of the booking process, a photo was taken of the individual purporting to be E.C. On the same date, law enforcement officers executed a search warrant at ▋. E.C.'s last name was written on a piece of paper affixed to the mailbox located outside near the front entrance of the residence at ▋. During the execution of the search warrant on September 15, 2022, law enforcement officers located (i) three Pennsylvania State identification

---

[6] On or about July 17, 2020, a UI claim in the identity of E.C. was filed with DUA. Based on a review of this claim application, DUA deemed E.C. to be ineligible.

cards in the name of J.F.R.[7] with a DOB of xx/xx/1976, (ii) two Pennsylvania State driver's licenses in the name of J.F.R. with a DOB of xx/xx/1976, (iii) a Social Security card with the name of J.F.R. and SSN xxx-xx-2618, and (iv) a birth certificate from Puerto Rico in the name of J.F.R. with a date of birth of xx/xx/1976. The Pennsylvania State identification cards and driver's licenses all appeared to contain a photograph of the same individual purporting to be E.C.

### Possession of E.C. Imposter Identity Documents

30. On December 31, 2022, the Quincy, Massachusetts Police Department arrested an individual purporting to be E.R.C. for the offense of Cocaine Trafficking. Pursuant to the arrest, law enforcement officers searched the individual purporting to be E.C.R and located several identification documents including a MassHealth card with no. xxxxxxxx9782 in the name of E.C., a Social Security card in the name of E.C. with SSN xxx-xx-1236, and a U.S. passport card with no. Cxxxx6522 in the name of E.C. and date of birth of xx/xx/1974. The passport card contained a photograph of the individual purporting to be E.C.

31. These documents were not seized by the Quincy Police Department, because they were not aware they were fraudulent documents.

### Photo Comparisons of Imposter

32. HSI obtained a copy of the Massachusetts Automated Fingerprint Identification System (AFIS) state rap sheet mugshots for FBI no. xxxxx3VA5 with at least five photos included depicting an individual with the name E.C. and date of birth of xx/xx/1974. I have compared those photographs to the following 11 photographs:

   a. the November 21, 2012 photograph from the RMV database of the applicant purporting

---

[7] The identity of the J.F.R. is known to the government. To protect J.F.R.'s privacy, only the initials are used in this affidavit to reflect variations of the victim's full name.

      to be E.C.;

b. the January 11, 2018 photograph submitted with the U.S. passport application by the applicant purporting to be E.C.;

c. the photograph contained in the Commonwealth of Massachusetts Department of Correction inmate identification card of an individual in the name of E.C. and a date of birth of xx/xx/1974;

d. the photograph from a healthcare service provider located in Roxbury, Massachusetts where services were received for the individual purporting to be E.C. with MassHealth account no. xxxxxxxx9782;

e. the September 15, 2022 photograph taken of the individual purporting to be E.C. after the arrest by the Weymouth, Massachusetts Police Department;

f. the December 31, 2022 photograph taken of the individual purporting to be E.C. after the arrest by the Quincy, Massachusetts Police Department; and

g. the five photographs of the individual depicted in the Pennsylvania State identification cards and driver's licenses in the name of J.F.R. located by law enforcement officers at the residence of the individual purporting to be E.C. during the execution of a search warrant at ███████████████████████████████████████████ on September 15, 2022.

    I conclude that the 16 photographs described above all depict the same individual.

### Identification of the Victim

33.    Information from Puerto Rico's Driver and Vehicle Identification Database ("DAViD") belonging to an individual named E.C.R. indicates this person has a date of birth of xx/xx/1974, is assigned SSN xxx-xx-1236 and lives in San Juan, Puerto Rico. I have examined a photograph associated with the DAViD record for this individual and conclude that the individual depicted in that photograph is not the same as the individual depicted in the sixteen (16) photographs from the preceding paragraph.

34.    Agents have spoken to the victim, E.C.R. in Puerto Rico. E.C.R. has never been to the continental United States, let alone Massachusetts. E.C.R. stated that he has no children, but is having his wages garnished by 15% because of child support claims out of Boston in his

name.

**Nexus Between Imposter and Property to be Searched**

35.     On December 12, 2022, agents conducted surveillance in the area of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Agents observed DOE (the individual using E.C.'s identity) exit through the front door of the residence located at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and retrieve mail from the mailbox affixed to the outside of the residence before departing the area.  On the same date, agents observed DOE reenter the residence located at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ through the front door.

36.     On September 1, 2023, agents conducted additional surveillance in the area of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Agents observed DOE (the individual using E.C.'s identity) exit through the front door of the residence located at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ before departing the area.

37.     Based on agents observing DOE entering and exiting the same residence on multiple occasions, including December 12, 2022 (just three months after the Weymouth, Massachusetts Police Department executed a search warrant there on September 15, 2022), and more recently on September 1, 2023, there is probable cause to believe DOE resides at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Additionally, DOE provided the same address following his arrest by the Quincy, Massachusetts Police Department on December 31, 2022.

38.     I have probable cause to believe the residence located at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ contains evidence, fruits, and instrumentalities of the crimes identified above.  I know, based on my training and experience, that:

   a. Individuals often keep identification documents and other evidence of identity for long periods—sometimes years—and tend to retain such documents even when they depart a given residence.  Such documents include social security cards, passports, tax returns, legal documents, utility bills, phone bills, health insurance or prescription

12

    cards, medical records, marriage licenses, family records, scrapbooks, photographs, diplomas and other school records, birth certificates, immunization records, bank records, credit card statements, personal correspondence and books or mementos on which they have inscribed their names.

  b. Individuals often keep identification documents and other evidence of identity in their residence, in part to ensure the security of these documents and in part to allow for access to these documents when needed.

  c. In addition, it is common for those who use other persons' identities without authorization to maintain fraudulently obtained identification documents in secure locations within their residence to conceal them from law enforcement authorities.

  d. It is common for individuals who use fraudulently obtained identification documents to retain those documents for substantial periods of time so that they can continue to use the fraudulently obtained identities.

39. Further, as noted above, during a December 31, 2022 arrest of the person purporting to be E.C., Quincy police officers located identification documents including a MassHealth card with no. xxxxxxxx9782 in the name of E.C., a Social Security card in the name of E.C. with SSN xxx-xx-1236, and a U.S. passport card with no. Cxxxx6522 in the name of E.C. that contained a photograph of the individual purporting to be E.C. and date of birth of xx/xx/1974. There is nothing to indicate that the person purporting to be E.C. has moved since that time and recent surveillance confirmed that he is still residing at this address.

40. All agents participating in the search of the premises described in Attachment A will be informed of the full name represented by the initials that appear in Attachment B.

## Conclusion

41. Based on the foregoing, I have probable cause to believe that, between on or about January 11, 2018 and on or about May 13, 2020, John DOE:

  a. falsely represented, for the purpose of obtaining a payment or other benefit to which DOE was not entitled, a number to be the social security account number assigned by the Commissioner of Social Security to him, in violation of 42 U.S.C. § 408(a)(7)(B);

  b. willfully and knowingly made a false statement in an application for passport with intent to induce or secure the issuance of a passport under the authority of the United States,

    either for his own use or the use of another, contrary to the laws regulating the issuance of passports or the rules prescribed pursuant to such laws and used, attempted to use, or furnished to another for use a passport which was secured by reason of a false statement in violation of 18 U.S.C. §1542;

c. devised or intended to devise a scheme for obtaining property by means of false or fraudulent pretenses or representations and used or caused to be used the U.S. mail in furtherance of that scheme in violation of 18 U.S.C. §1341;

d. for the purpose of conducting, promoting, or carrying on by means of the Postal Service the aforementioned scheme requested to be addressed by any false name, assumed title, or name other than his own proper name, or took or received from any post office or authorized depository of mail any mail matter addressed to a fictitious name or name other than his own proper name in violation of 18 U.S.C. § 1342; and

e. knowingly and with the intent to defraud, executed a scheme to obtain money, funds, and property from DUA by means of materially false and fraudulent representations, pretenses, and promises that were transmitted or caused the transmission of an interstate wire in violation of 18 U.S.C. § 1343; and

f. during and in relation to felony violations listed in 18 U.S.C. § 1028A(c), knowingly transferred, possessed, or used without lawful authority a means of identification of another person in violation of 18 U.S.C. § 1028A.

Based on the forgoing, I have probable cause to believe that evidence, fruits, and instrumentalities of these crimes, as described in Attachment B, are located in the premises described in Attachment A.

    Sworn to under the pains and penalties of perjury.

/s/ Peter A. Coste
PETER A. COSTE
Special Agent
Homeland Security Investigations

Telephonically
Subscribed and sworn before me on September 18, 2023

/s/ Judith Gail Dein
HON. JUDITH G. DEIN
United States Magistrate Judge

## ATTACHMENT A

### Premises To Be Searched

[redacted]



## ATTACHMENT B

### Evidence to Be Searched for and Seized

